EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MICHAEL PETERSON and MATTHEW LYONS, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 1:14-cv-1919 |
| | : | |
| AARON'S, INC. and ASPEN WAY ENTERPRISES, INC. d/b/a Aaron's Sales and leasing, a franchisee of AARON'S, INC. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Michael Peterson and Matthew Lyons, individually and on behalf of all similarly situated persons, sue Aaron's, Inc., ("Aaron's") and Aspen Way Enterprises, Inc. d/b/a Aaron's Sales and Leasing, a franchisee of Aaron's, Inc. ("Aspen Way"), (collectively hereinafter "Defendants") and allege:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and as a Class Action for the benefit of (a) all persons who have purchased and/or leased from

Aspen Way ("Lease-Purchase") a computer that had PC Rental Agent installed without such person's consent, and (b) all such person's Permitted Users.

2.     Plaintiffs and the Class seek injunctive relief and damages relating to the harm caused by Defendants' unlawful invasion of privacy.

3.     Unbeknownst to Plaintiffs and the members of the Class, and without their authorization, Defendants have been spying on the activities of Plaintiffs and class members through the use of spyware called PC Rental Agent, which was created and sold by DesignerWare, LLC ("DesignerWare").  When the Detective Mode feature of PC Rental Agent is activated, the software is able to activate the computers' webcams and capture photographs of persons using computers in the privacy of their homes or in other places in which they had reasonable expectations of privacy.  In addition, PC Rental Agent allowed Defendants to collect, transmit, and store class members' financial and other personal information, including credit and debit card numbers, expiration dates, security codes, pin numbers, passwords, social security numbers, birth dates, identity of children and the children's personal and school records, tax returns, personal health information, employment records, bank account records, email addresses, login credentials, answers to security questions, and private communications with health care providers, therapists, attorneys and other confidants (collectively, "Personal Information").  Upon information and belief,

this highly-confidential Personal Information has been circulated repeatedly without encryption over the Internet and stored on numerous computers around the country.

4.      Defendants have chosen not to provide notice to any of its customers that PC Rental Agent was installed on their computers or that they have activated Detective Mode any of the computers.

## PARTIES

### Plaintiffs

5.      Plaintiff Michael Peterson resides in Fort Collins, Colorado and was a customer of Defendants by virtue of his Lease-Purchase of a computer from the Aspen Way store (Store F353) located at 216 W. Horsetooth Road, Fort Collins, Colorado, 80525.

6.      Plaintiff Matthew Lyons resides in Tulsa, Oklahoma and was a customer of Defendants by virtue of his Lease-Purchase of a computer from the Aspen Way store (Store F353) located at 216 W. Horsetooth Road, Fort Collins, Colorado, 80525.

7.      Plaintiffs Peterson and Lyons leased-purchased several computers from Store F353 and used these computers to conduct business at their law firm.

**Defendants**

8.      Aaron's is a publicly traded corporation incorporated under the laws of the State of Georgia.  Defendant is headquartered in Georgia with its principal office located at 309 East Paces Ferry Road, N.E., Atlanta, Fulton County, Georgia 30305.

9.      Aspen Way is a franchisee of Aaron's and is a Montana business that has retail stores in Colorado, Montana, South Dakota, Washington, and Wyoming.

10.      According to Aaron's Uniform Franchise Offering Circular, Aspen Way executed the following contracts: Franchise Agreement, Exterior Sign Lease Agreement, Equipment Lease, Area Development Agreement, and Line of Credit and Security Agreement.

11.      Each of these contracts provides that any litigation relating to these agreements must be brought in Georgia and Georgia law governs all disputes.

12.      Additionally, pursuant to these contracts, Aspen Way is required to make the following payments to Aaron's, Inc. in Georgia: Continuing License Fee, Ad Production Fee, Regional Media Fee, Advertising Agency Fees, Consulting Services Fee, Transfer Fee, Tax Reimbursement, Renewal Fee, Site Evaluation Fee, Sign Lease Payments, Equipment Lease Payments, Software License Fee, Administrative Fees, Indemnification, and Extension Option Fee.

13.     Several of these payments are to be paid to Aaron's, Inc. in Georgia on a weekly basis.

14.     Pursuant to the Franchise Agreement, Aspen Way leases its computers and operating software from Aaron's.

15.     Also pursuant to the Franchise Agreement, Aaron's has the right to monitor the use and content of any internet website owned or used by Aspen Way in connection with Aspen Way's business, and upon Aaron's request, Aspen Way shall provide to Aaron's such access and any other information related to any such website as is requested by Aaron's.

16.     Aspen Way's email is stored on Aaron's servers located in Georgia.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the claims asserted in this action.

18.     This Court has personal jurisdiction over the parties to this litigation.

19.     Venue is proper in this Court.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action on behalf of themselves and, Pursuant to Federal Rule of Civil Procedure 23, a Class of other similarly-situated persons defined as follows:

(a) All persons who leased and/or purchased one or more computers from Aspen Way on which PC Rental Agent was installed without such persons' consent on or after June 6, 2008;

(b) All household members (as defined by the U.S. Census Bureau) of the persons identified in subsection (a); and

(c) All employees of such persons identified in subsection (a).

21.    Specifically excluded from the Class are Defendants, subsidiaries and affiliates of Defendants, and directors, employees, and attorneys of Defendants or any subsidiary or affiliate of Defendants.

22.    The Class is so numerous that joinder of all members is impracticable.

23.    Plaintiffs' claims are typical of the claims of the other class members, as Plaintiffs and all other class members were injured in exactly the same way – by the unauthorized installation of spyware on their computers.

24.    Plaintiffs will fairly and adequately represent the interests of the Class and have retained counsel competent and experienced in Class Action litigation.

25.    Plaintiffs have no interests that are contrary to or in conflict with those of the Class.

26.    A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy under the acts described below. Given the nature of these claims, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the unlawful conduct alleged.

27.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class Action.

28.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members.  Among the questions of law and fact common to the Class are the following:

a.    Whether Defendants' actions alleged herein constituted common law invasions of Plaintiffs' privacy;

b.    Whether Defendants' actions alleged herein constitute computer trespass in violation of O.C.G.A. § 16-9-93(b);

c.    Whether Defendants' actions alleged herein constitute computer invasion of privacy in violation of O.C.G.A. § 16-9-93(c);

d.    Whether Defendants participated in and pursued the common course of conduct complained of; and

e.      Whether Plaintiffs and members of the Class are entitled to compensatory damages, as well as statutory and punitive damages, and equitable relief.

29.     Plaintiffs bring this action under Fed. R. Civ. P 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final relief concerning the Class as a whole proper.   In the absence of appropriate injunctive relief requiring Defendants to notify all Class Members that their Personal Information have been breached, Class Members will suffer irreparable harm.   Defendants' uniform conduct towards Plaintiffs and the other members of the Class makes certification under Rule 23(b)(2) appropriate.

30.     Plaintiffs also bring this action under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact identified herein predominate over questions of law and fact affecting individual members of the Class.   Indeed, the predominant issues in this case are whether Defendants have violated the law by the unauthorized, inappropriate and undisclosed invasion of privacy. Certification under Rule 23(b)(3) is appropriate because:

a.      by virtue of the secret nature of the spying device and software described in this complaint, individual class members may not be aware that they have been injured and are thus unable to prosecute

individual claims or take appropriate steps to protect their Personal Information;

      b.    concentration of the litigation concerning this matter in this Court is desirable;

      c.    the claims of the representative Plaintiffs are typical of the claims of the members of the putative class;

      d.    a failure of justice will result from the absence of a class action; and

      e.    the difficulties likely to be encountered in the management of this class action are not great.

## FACTUAL BAKGROUND AND ALLEGATIONS

31.    PC Rental Agent is a software program that is invisible or generally undetectable to customers and other users of Aspen Way's Lease-Purchase computers.

32.    According to the PC Rental Agent Manual, when installing PC Rental Agent, the factory installed anti-virus software that initially comes with the computer is deleted.  This is done without Plaintiffs' knowledge or consent.

33.    Once installed, PC Rental Agent allows Defendants to remotely lock down its customer's computers at any time.

34.   When used, the lockdown feature of PC Rental Agent destroys data that is in use at the time the computer is locked by Defendants.

35.   PC Rental Agent is also a "rootkit."  A rootkit is a type of software that acquires and maintains privileged access to the operating system (OS) while hiding its presence by subverting normal OS behavior.

36.   Upon information and belief, the PC Rental Agent rootkit negatively impacts the Lease-Purchase computers in one or more of the following ways:

- Prevents class members from being able to reset the computer to manufacturer default settings;

- Causes conflicts with legitimate software applications;

- Poses a potential security risk by opening unnecessary TCP/IP ports by causing unnecessary network communication;

- Slows the boot-up process and operation of the computer;

- Sends user information to third parties;

- May cause conflicts with vital functions such as printing and web browsing;

- Negatively impacts system resources - e.g., memory, CPU;

- Alters vital operating system files;

- Causes the computer to crash more often;

- Uses bandwidth;

- Suppresses antivirus and malware detection software.

37.     In 2007, the Director of Operations for Aspen Way, Travis Higdon, attended the Annual Manager's Meeting in Texas.   The Annual Manager's Meeting is a meeting sponsored by Aaron's, Inc. to provide information to the entire Aaron's franchise, including Aaron's corporate locations and Aaron's franchisees. At this meeting Higdon and other franchisee representatives learned about PC Rental Agent from Aaron's Director of Western Franchise Operations. Higdon was provided the contact information for DesignerWare at this meeting from an Aaron's, Inc. representative.

38.     Aaron's has also provided various training seminars, both via live format on the internet and via webinar, in which Aaron's has discussed PC Rental Agent with Aspen Way.   Aaron's has provided Aspen Way with assistance with the use of anti-virus software in relation to PC Rental Agent, which was (but, no longer is) posted under the Computer Support tab on the Sales and Lease website.

39.     It was the policy of Aspen Way to install PC Rental Agent software on every computer to be leased to its customers.

40.    Once PC Rental Agent is installed on a Lease-Purchase computer, it permits the installer – in this case Aspen Way – to remotely install and or activate over the Internet the "Detective Mode" feature.

41.    After Detective Mode is activated, it permits the installer to choose among various levels of surveillance, including webcam photographs, computer screenshots, and key logs.  The surveillance is sent from DesignerWare to the installer through email transmissions, which have the keystrokes, screenshots, webcam images, and other data attached.

42.    The full identities of the customers who had Detective Mode activated on their computers are known only to Defendants.

43.    Defendants have received data captured by Detective Mode via electronic mail.

44.    Since on or about August 2011, Aspen Way began to routinely use an update to the PC Rental software that allowed it to physically track its customers' location through Google Maps ("Updated PC Rental Agent").

45.    With the Updated PC Rental Agent, any computer with a wireless card automatically logs the WiFi hotspots seen by the card or used to connect to the Internet.  When a computer connects to DesignerWare's servers, it reports the WiFi hotspot location information along with the computer's IP address.

46.     DesignerWare cross-references the information logged by PC Rental Agent with a publicly-available list of WiFi hotspot physical locations and provides its licensees with street addresses for the particular WiFi hotspots viewed or accessed by the computer.   The information derived from WiFi hotspot contacts frequently can pinpoint a computer's location to a single building, and, when aggregated, can track the movements and patterns of individual computer users over time.   DesignerWare provides Aspen Way with this location information for the ten most recent reporting cycles.

47.     Aspen Way installed the Updated PC Rental Agent to every computer that it leased, or sold, without obtaining consent from, or providing notice to, its Lease-Purchase customers.   The Plaintiffs and other class members, therefore, did not know that their physical locations could be determined and disclosed.   Nor did they know that employees of Aspen Way could monitor their physical locations and patterns of movements.

48.     It has been the practice and policy of Defendants to conceal from their customers – and not to obtain such customers' consent or authority to permit – Defendants' ability to remotely intrude upon the seclusion of Plaintiffs, or to remotely access, intercept and monitor customers' private, personal electronic communications, information, screen shots, keystrokes or images captured on webcams.   Nor have Defendants disclosed to consumers exactly

what kinds of private information and images could be (and were) routinely collected, transmitted, and stored.

49.     Aspen Way's sales, rental or lease agreements neither sought permission from, nor disclosed to Plaintiffs the presence of PC Rental Agent or Aspen Way's ability to monitor and intercept communications, photographs taken with the webcam, and other data from the Lease-Purchase computer, wherever those computers might be.

50.     Aaron's requires Aspen Way to receive Aaron's and Franchise-business Email through Aaron's official "aarons.com" or "aaronrents.com" email accounts, which are transmitted through the Aaron's corporate server.

51.     Through the Aaron's franchise agreements with Aspen Way ("franchise agreement") Aaron's prohibits Aspen Way from using any website in connection with franchised business without the express consent of Aaron's. The agreements further provide that such consent may be arbitrarily withheld by Aaron's.

52.     Pursuant to the franchise agreement between Aspen Way and Aaron's, Aaron's retained and maintained the power, control and ability to revoke and terminate any Franchise for any reason it unilaterally deemed appropriate or necessary.

53.     At all times relevant to the facts alleged herein, Aaron's retained the control to prevent Aspen Way's use of Aaron's corporate server and a portal Aaron's intentionally opened within Aaron's internal intranet, as well as Email transmitted through Aaron's corporate server, which allowed Aspen Way to intercept Plaintiffs' communications and images, as alleged herein.

54.     Instead, Aaron's chose to permit and promote such activity despite specific knowledge that Aspen Way was utilizing the integral portal and Aaron's corporate server to secretly gather photographs of Aaron's customers well as their computer keystrokes and screenshots, all without the permission of those customers.

55.     Pursuant to the franchise agreements, once the express consent to use a website is granted, Aaron's retains the right to monitor the use and content of any such website accessed or used in connection with Aspen Way's business; and, upon Aaron's request, Aspen Way must provide Aaron's with access and any other information related to any website as is requested by, and in the sole discretion of, Aaron's.

56.     Before consent was obtained from Aaron's concerning Aspen Way's access or use of PC Rental Agent® website(s), a firewall within the Aaron's corporate server prevented Aspen Way from being able to access said website(s), or install the Detective Mode on the RTO computers held by Plaintiff

and other Aaron's customers; and thus, at that time the use of PC Rental Agent®
by Aspen Way was not possible.

57.    By at the latest, June 15, 2009, at the request of an Aaron's
franchisee, Aaron's expressly consented to the use of PC Rental Agent®
website(s), by opening a portal on the Aaron's intranet, allowing the Franchisee
to access and use PC Rental Agent® to install the Detective Mode on RTO
computers, and thereafter illegally spy on Aaron's customers, all through the
Aaron's corporate server.

58.    After June 15, 2009, Aaron's consented to Aspen Way's use of and
access to PC Rental Agent® website(s) on multiple occasions for various
franchisee stores, including Aspen Way on multiple occasions including the
following dates: July 31, 2009, February 2, 2010, May 10, 2010, and November
2, 2010.

59.    On September 2, 2010, Aaron's Vice President Scott Harvey, and
other top executive officers within Aaron's, were advised through a series of
Emails from other corporate employees that PC Rental Agent®, which Aspen
Way was using, was very intrusive, key-logging all the customer's key strokes,
transmitting images of the customers' screenshots, and transmitting photographs
of computer users taken through the customers' webcams.  The series of Emails
included an example of the spying capabilities – a photograph secretly taken via

the RTO computer's webcam, of a man smoking a cigarette while using his computer.

60.   By September 2, 2010 – at the latest – Aaron's knew that by consenting to Aspen Way's access to and use of the PC Rental Agent® website(s), and requiring that such use of and access to such website(s) be through its corporate intranet and corporate server as well as that the images and data gathered in such spying activity be transmitted to Aspen Way's stores through Aaron's corporate server, Aaron's was intimately and integrally involved with Aspen Way's acts of using Detective Mode and spying upon Aaron's customers.

61.   Despite this knowledge, Aaron's did not revoke its consent for Aspen Way's use of or access to the PC Rental Agent® website(s) for more than 15 months, and instead, chose to continue permitting such access and use of the websites and the spying activity, all through its corporate intranet and server.

62.   Aaron's did not tell Aspen Way to stop using PC Rental Agent® to spy on customers, and in fact, did not see anything wrong with these activities.

63.   Defendants have not advised any customer whether their Personal Information, or the Personal Information of other users, had been compromised.

64.   No customer has received notice that Detective Mode had been installed and activated on their computer; that they continue to suffer harm and

potential harm because their personal private information and webcam images have been downloaded by Defendants' employees; or that that information may have been transmitted to third parties placing them at an increased risk of fraud and identity theft.  Because of Defendants' covert conduct, no customer has been put on notice that Defendants' invaded their privacy.  Until Defendants advise their customers that Detective Mode was installed on their computers, no customer can know with certitude the extent of Defendants' efforts to gather information from their computers.

65.    Because of the actions and inaction of Defendants, Plaintiff and the Class are continuing to suffer irreparable harm as set forth above.  Such harm will continue until such time as the Class are provided with notice definitively stating whether or not their Personal Information has been compromised.

## CLASS REPRESENTATIVES

66.    Plaintiffs are attorneys who took ownership of several computers through a lease purchase agreement with Aspen Way (Store F353) in order to conduct business for their law firm.  Plaintiffs never reported these computers as stolen or lost.

67.    Aspen Way is not the owner of these computers.

68.    PC Rental Agent was installed on their computers.

69.     Because of the secretive nature of this spyware, Plaintiffs do not know whether the software still remains on their computers.

70.     Between October 21, 2010 and February 7, 2011, Aspen Way used Detective Mode on computer 1900999179 and as a result captured 4,702 screen shots, and 2,464 key log entries.

71.     The following is just one of the thousands of screen shots Defendants took from Plaintiffs' computer:



72.     Many of these images and key log entries contain attorney work product and/or privileged communications regarding Plaintiffs' clients.

73.     Many images and key log entries contain personal, financial and employment data relating to Plaintiffs.

74.     Defendants installed and activated PC Rental Agent on Plaintiffs' computers without obtaining Plaintiffs' authorization to do so.

75.     The Purchase-Lease agreement did not disclose that Defendants had installed PC Rental Agent on Plaintiffs' computers.

76.     Plaintiffs utilized their computers to connect with the Internet in order to conduct business and personal matters.

77.     Plaintiffs' computers were secretly accessed by Defendants, resulting in Plaintiffs' computer activity being tracked and causing damage to his computer.

78.     As a result of Defendants' conduct, Plaintiffs privacy was invaded and their computers were damaged.

## COUNT I
### (Invasion of Privacy/Intrusion on Seclusion)

79.     Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1 through 78 above.

80.     Defendants have intruded upon the privacy rights of the Plaintiffs and class members, Defendants have also violated Plaintiffs and class members' rights to maintain seclusion and solitude for themselves, their employees, their family, and their invitees.

81.     Defendants' actions and conduct have been and continue to be

outrageous and unreasonable.

82.     Defendants' actions violated O.C.G.A. § 16-9-93.

83.     Defendants violated the Plaintiffs' and class members' rights to privacy.

84.     The Plaintiffs and class members have suffered injury as a consequence of Defendants' acts and conduct.

85.     The Plaintiffs and class members are entitled to an award of damages in an amount to be proven at trial.

## COUNT II
### (Computer Trespass – O.C.G.A. § 16-9-93(b))

86.     Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1 through 78 above.

87.     Defendants installed PC Rental Agent on the Plaintiffs' and class members' computers without authority.

88.     While installed, PC Rental Agent negatively impacted the functionality of the computer.

89.     Defendants' actions constitute the crime of "Computer Trespass" as set forth in O.C.G.A. § 16-9-93(b).

90.     As a result of the installation of PC Rental Agent, the functionality and security of each computer has been negatively affected and thereby

damaged.

91.     Pursuant to O.C.G.A. § 16-9-93(g)(1), Plaintiffs and class members are entitled to recover the damages they sustained as a result of Defendants' computer trespass, in an amount to be proven at trial.

## COUNT III
### (Computer Invasion of Privacy - O.C.G.A. § 16-9-93(c))

92.     Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1 through 78 above.

93.     Upon information and belief, Defendants installed spyware on Plaintiffs' and class members' computers and used the confidential information they obtained with the intention of examining and/or accessing Plaintiffs' and class members' personal data.

94.     Defendants' actions constitute "Computer Invasion of Privacy" as that crime and the civil liability therefore is defined in O.C.G.A. § 16-9-93(c).

95.     Pursuant to O.C.G.A. § 16-9-93(g)(1), Plaintiffs and class members are entitled to recover the damages they sustained as a result of Defendants' computer invasion of privacy, in an amount to be proven at trial.

## COUNT IV
### (Conspiracy)

96.     Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1 through 78 above.

97.    Aspen Way and Aaron's acted with a common purpose to commit and do unlawful acts, namely: to commit the tort of intrusion on seclusion, and thus invade the privacy of Plaintiffs and the class members; and to illegally and in violation of the Georgia Computer Systems Privacy Act, trespass and invade the privacy of Plaintiffs' computers.

98.    Both Defendants committed overt acts to further their common purpose as described herein:

a.    Aaron's Inc. expressly consented to, aided, assisted and directly participated in said spying activities while maintaining control and authority over its corporate intranet and server, and over Aspen Way, and after learning of the very illegal nature of the spying activities, which its express consent, aid and assistance made possible, chose to continue to expressly consent aid and abet in such illegal spying and, in fact, utilize Aspen Way's illegal conduct as a Beta study to determine if it might prove profitable for its corporation.   Further, between September of 2010 and December of 2011, Aaron's was not a passive participant in the conspiracy, and did not withdraw or disavow participation in the conspiracy.   Without expressly consenting to its Franchisees' requests, and thereafter providing the avenue to the DesignerWare and PC Rental Agent® website and server, and ultimately, the customers' RTO computers, and without its continued cooperation in allowing such illegal spying and interception of

personal and private information and communications, none of the illegal conduct was possible.

99.     The conduct of Defendants was *per se*, malicious as they acted in concert to commit unlawful acts, and, alternatively, was malicious as they undertook the activity with the intent to injure Plaintiffs and the class, and was without legal justification.

100.   The conduct of Defendants caused actual legal damage to Plaintiffs and the class as described herein, including, but not limited to, the compensatory damages to which they are entitled for the invasion of their privacy and the trespass of their computers, as well as their attorneys' fees and punitive damages.

101.   The Defendants are jointly and severally liable for the damages caused to Plaintiffs and the Class.

## COUNT V
### (Aiding and Abetting)

102.   Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1 through 78 above.

103.   Aaron's Inc. aided and abetted Aspen Way in their acts of invading the privacy and committing computer trespass against Plaintiffs and the Class; to wit: Aaron's Inc. knew, understood, or learned that tortuous and criminal acts had been, were, or would be committed, by Aspen Way; that Aspen Way's

tortuous and illegal conduct constituted breaches of common law and statutory duties toward Plaintiffs and the Class; and thereafter provided substantial assistance to Aspen Way in the form of physical assistance, participation and/or encouragement of their conduct.

104.   The substantial assistance provided by Aaron's, Inc., as alleged herein, included their express consent to permit Aspen Way to use and access the DesignerWare and/or PC Rental Agent® website(s) via the Aaron's, Inc. corporate intranet and server to build and install the Detective Mode on Aaron's customers' computers, as well as their consent to allow Aspen Way to secretly spy on and invade the privacy of Aaron's customers in their homes, and intercept private and personal information and electronic communications, all through the Aaron's, Inc. server and the email accounts it owned and managed in Georgia.

105.   Not only was the substantial assistance provided by Aaron's, Inc. a proximate cause of the resulting illegal conduct and damages to Plaintiffs and the Class, as alleged herein, such illegal conduct and resulting damages was impossible without Aaron's substantial assistance.

106.   As alleged herein, Plaintiffs and the Class suffered damages as a result of such aiding and abetting by Aaron's, Inc.

107.   As a result, Aaron's is jointly and severally liable for the compensatory damages caused to Plaintiffs and the Class.

WHEREFORE, Plaintiffs pray:

(a)     That Plaintiffs have a trial by jury on all issues so triable;

(b)     For an order certifying the Class under the appropriate provisions of Fed. R. Civ. P. 23 and appointing Plaintiffs and their legal counsel to represent the Class;

(c)     Requiring Defendants to provide immediate and appropriate notice, credit monitoring, and identity-theft prevention services to Plaintiffs and the other class members;

(d)     That Plaintiffs be compensated by Defendants for their damages;

(e)     That Plaintiffs receive from Defendants compensatory and punitive damages in an amount to be determined by the enlightened conscience of an impartial jury; and

(f)     That Plaintiffs have such other and further relief as to the Court deems just and necessary.

**HERMAN GEREL LLP**

s/ Andrea S. Hirsch
Andrea S. Hirsch
Bar No. GA 666557
ahirsch@hermangerel.com
Edward C. Konieczny
Bar No. 428039
ekonieczny@hermangerel.com
230 Peachtree Street, Suite 2260
Atlanta, GA 30303

Telephone: 404-880-9500

ATTORNEYS FOR PLAINTIFFS AND PROPOSED CLASS