IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL PETERSON, et al.,

    Plaintiffs,

       v.

                         CIVIL ACTION FILE
                         NO. 1:14-CV-1919-TWT

AARON'S, INC., et al.,

    Defendants.

## OPINION AND ORDER

The Plaintiffs allege that the Defendant Aspen Way Enterprises, Inc. unlawfully accessed their computers from a remote location and gained possession of private information stored therein. It is before the Court on the Plaintiffs' Motion for Sanctions [Doc. 114]. For the reasons set forth below, the Plaintiffs' Motion for Sanctions [Doc. 114] is GRANTED in part and DENIED in part.

## I. Background

The Defendant Aspen Way Enterprises, Inc. – a franchisee of the Defendant Aaron's, Inc. – is in the business of, *inter alia*, leasing and selling consumer electronics. This case concerns a software program that Aspen Way allegedly installed on its lease-purchase computers. Specifically, the Plaintiffs allege that Aspen Way

remotely accessed their computers and captured private information via the software program – PC Rental Agent ("PCRA"). The software had an optional function called "Detective Mode." When activated, Detective Mode could collect screenshots, keystrokes, and webcam images from the computer. In 2014, the Plaintiffs brought suit against Aspen Way for invasion of privacy and against Aaron's for aiding and abetting Aspen Way.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), the Plaintiffs noticed the deposition of Defendant Aspen Way's corporate representative for January 19, 2016.[1] The notice identified eighteen topics of examination. The topics ranged from "Aspen Way's Use of PC Rental Agent ("PCRA") and/or Detective Mode ("DM")," which had multiple sub-topics, to "Aspen Way's process and procedure for handling late payments on computer leases."[2] Aspen Way designated two witnesses to testify on its behalf: John Pollock, Aspen Way's former Director of Operations, and Rohnn Lampi, Aspen Way's owner and CEO. The parties agreed to divide the topics between

---

[1]      In an effort to coordinate with the Aaron's, Inc. v. Byrd litigation, pending in the Western District of Pennsylvania, and pursuant to an agreement between the parties, the Plaintiffs and the Defendant Aaron's cross-noticed the depositions in question in both actions. See Pls.' Mot. for Sanctions, Ex. A.

[2]      Id.

Pollock and Lampi based on each witness's relevant knowledge.[3] The depositions were scheduled over a two day period.

During the second day, Pollock became angry and agitated. The situation apparently became so volatile that the local police department was called and Pollock was escorted out of the building by the police.[4] The deposition was terminated. Aspen Way admits that Pollock experienced "some sort of breakdown."[5] Following the termination of the deposition, the parties met with Magistrate Judge Susan Baxter, who is handling the <u>Byrd</u> litigation.[6] Judge Baxter ordered Aspen Way to determine whether Pollock would remain as its 30(b)(6) witness.[7] Two months later, Aspen Way notified the court that Pollock would indeed continue as its designee.[8]

The second deposition was scheduled for August 23, 2016.[9] Unfortunately, like the first deposition, the second deposition ended early due to a disgruntled Pollock.

---

[3]    <u>Id.</u>, Ex. B (dividing the deposition topics).

[4]    <u>Id.</u>, Ex. C, at 34.

[5]    Def. Aspen Way's Resp. Br., at 4.

[6]    Pls.' Mot. for Sanctions, Ex. D, at 16.

[7]    <u>Id.</u>

[8]    <u>Id.</u>, Ex. E.

[9]    <u>Id.</u>, Ex. G.

Pollock claimed that he never consented to being Aspen Way's designee.[10] Aspen Way paints a different picture of the second deposition. It contends that "Plaintiffs' counsel asked Pollock a series of questions that appeared to sow confusion in Pollock's mind as to the distinctions between testifying individually and as a corporate representative and between appearing voluntarily or by subpoena . . . ."[11] Thus, Aspen Way blames the Plaintiffs for the early termination of the second deposition. It should be noted that Aaron's agrees with the Plaintiffs' description of events and notes that it never even had an opportunity to question Pollock at either deposition.[12]

Based on the unsuccessful depositions, the Plaintiffs move for sanctions pursuant to Federal Rule of Civil Procedure 37. They contend that Aspen Way failed to produce a willing designee. The Plaintiffs also take issue with Pollock's preparedness. They allege that Aspen Way "utter[ly] fail[ed] to properly prepare its designee to answer the questions identified in the deposition notice."[13] The Plaintiffs ask the Court to enter the following relief: (1) bar the testimony of John Pollock as Aspen Way's 30(b)(6) designee; (2) bar Aspen Way from taking a position at class

---

[10]     Id., Ex. C, at 35.

[11]     Def. Aspen Way's Resp. Br., at 7.

[12]     Def. Aaron's Resp. Br., at 5.

[13]     Pls.' Mot. for Sanctions, at 9.

certification or trial on the topics that Pollock failed to provide testimony and impose an adverse inference against Aspen Way for each topic; and (3) prohibit Aspen Way from making any arguments or presenting any evidence regarding the topics.[14]

As noted above, Aaron's agrees with the Plaintiffs regarding the facts. However, Aaron's differs regarding the appropriate sanction. Aaron's states that any adverse inferences against Aspen Way would also prejudice Aaron's, despite the fact that Aaron's and its counsel are not at fault for Pollock's failed depositions. Thus, Aaron's asks the Court to fashion a sanction that would not be unfairly prejudicial to it. Aaron's suggests three alternative sanctions: (1) bar reliance on Pollock's testimony for any purpose; (2) bar Pollock from testifying at trial; and (3) reopen discovery for the limited purpose of conducting another 30(b)(6) deposition.[15]

## II. Discussion

Under Federal Rule of Civil Procedure 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity."[16] "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to

---

[14]   Id. at 24.

[15]   Def. Aaron's Resp. Br., at 9.

[16]   FED. R. CIV. P. 30(b)(6).

testify on its behalf . . . ."[17] "Absolute perfection is not required of a Rule 30(b)(6) witness."[18] Nevertheless, the organization has an affirmative duty to prepare its designees.[19] And this "duty . . . goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The [organization] must prepare the designee to the extent matters are reasonably available, whether from documents, past employees or other sources."[20] "If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute."[21] If the named organization fails to adhere to its 30(b)(6) obligations, Federal Rule of Civil Procedure 37 allows the Court to impose sanctions.[22] Permissible sanctions range "from the imposition of costs to preclusion of testimony and even entry of default."[23]

---

[17]    Id.

[18]    Aldridge v. Lake Cty. Sheriff's Office, No. 11 C 3041, 2012 WL 3023340, at *4 (N.D. Ill. July 24, 2012).

[19]    Id.

[20]    Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006) (citations omitted).

[21]    Id.

[22]    Fed. R. Civ. P. 37(d)(1)(A)(i).

[23]    QBE Ins. Corp. v. Jorda Enters., Inc., 277 F.R.D. 676, 690 (S.D. Fla. 2012) (citing Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 269 (2d Cir. 1999)).

It is clear to the Court that Aspen Way failed to provide a consenting designee. The Court is not at all persuaded that the Plaintiffs provoked Pollock's lack of consent during the second deposition. The Plaintiffs merely questioned whether Pollock consented to being a 30(b)(6) witness and attempted to ensure that he understood the difference between testifying as himself and testifying as Aspen Way.[24] The Court also finds that Aspen Way failed to properly prepare Pollock. There is no indication that Pollock interviewed any relevant witnesses or reviewed a significant amount of Aspen Way's internal documents. To be sure, Pollock testified during his first deposition that he reviewed the deposition testimony of Aspen Way employees, Aspen Way's discovery responses, and some electronically-stored information.[25] He also testified that he met with Aspen Way's counsel for a few hours the night before the deposition.[26]  But based on the topics noticed, this was not sufficient preparation to testify as Aspen Way's designee.

On topic 2(k), Pollock testified that Aspen Way did not know whether communications occurred with customers at the time of lease/sale regarding Aspen

---

[24]    Def. Aspen Way's Resp. Br., Ex. C., at 34-44.

[25]    Id., Ex. B, at 22-26.

[26]    Id.

Way's use of PCRA/Detective Mode.[27] He said the majority of the testimony he provided on the topic "was answering as myself, what I knew. And as far as Aspen Way, what Aspen Way, I don't know. I don't know."[28] And on topic 2(g)/(j), Pollock could not recall whether Aspen Way told customers about the functionality of Detective Mode.[29] On topic 2(e), Pollock could not specifically name any general managers that were given direct access to confidential information collected by Detective Mode.[30] On topic 2(j)(i), Pollock did not know whether Aspen Way provided any written policies or instructions to its employees as to how to inform customers about PCRA. Pollock testified: "I don't – I don't – I don't know specifically, I mean other than the document that Mr. Lampi produced, I don't know, besides me, who he produced that to."[31] As the Plaintiffs correctly point out, Aspen Way could have interviewed employees who handled computer lease/sale closings and confidential PCRA information to prepare Pollock on these topics.

---

[27]   Id. at 69.

[28]   Id.

[29]   Id. at 73-74, 340-41, 413-14.

[30]   Id. at 130.

[31]   Id. at 343.

On topic (2)(l), Pollock did not know important details about the end user license agreement between Aspen Way and DesignerWare. Pollock did not know who negotiated the agreement, or who first placed Aspen Way's order for PCRA.[32] More importantly, Pollock did not review the agreement, so he was unable to testify about its terms.[33] In response, Aspen Way argues that Lampi had more knowledge about the topic and, therefore, was the more appropriate witness for it. Nevertheless, Aspen Way agreed to the topics and the division of the topics between the two designees. The topic concerning "Aspen Way's agreement(s) and understandings with DesignerWare regarding the use of PCRA/DM" was assigned to Pollock.[34] Thus, it was Aspen Way's responsibility to prepare him on it.

On topic 17, the Plaintiffs inquired about Chastity Hittinger's employment history. Ms. Hittinger was a key witness at a preliminary injunction hearing in the Byrd matter. However, Pollock said he did not review any documents or interview any witnesses with regard to Hittinger's relationship with Aspen Way.[35] Pollock did not know key facts such as when she was terminated, what kind of performance reviews

---

[32]   Id. at 176-177.

[33]   Id.

[34]   Pls.' Mot. for Sanctions, Ex. B.

[35]   Def. Aspen Way's Resp. Br., Ex. B, at 355.

she received, or who her general manger was while she was a sales manager.[36] Aspen Way counters that Pollock's testimony regarding his personal knowledge of Hittinger's employment is sufficient. However, it is the Defendant's responsibility to prepare its witness "to the extent matters are reasonably available."[37] Aspen Way clearly failed to fulfill that duty with regard to Hittinger's employment history.

Aspen Way should have prepared Pollock to testify on its behalf for each of the Rule 30(b)(6) topics. "Defendant does not contend that the information on these topics was not known or was inaccessible when [Pollock] testified at the 30(b)(6) deposition."[38] Aspen Way simply does not provide a reason as to why Pollock was not prepared to testify for all assigned topics. In addition, because the depositions ended prematurely, Pollock did not provide any testimony on the following topics: 2(n), 2(o), 2(q), 4(b), 4(c), 5, 13, and 15. This leads the Court to the conclusion that Aspen Way's failure to provide a consenting and prepared witness "is tantamount to a failure

---

[36]    Id. at 356, 372.

[37]    Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006).

[38]    Strategic Decisions, LLC v. Martin Luther King, Jr. Center Nonviolent Social Change, No. 1:13-cv-2510-WSD, 2015 WL 2091714, at *9 (N.D. Ga. May 5, 2015) (citing Rainey v. American Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 94 (D.D.C. 1998)).

to appear that is sanctionable [as a nonappearance] under Rule 37(d) of the Federal Rules of Civil Procedure."[39]

As noted above, the Plaintiffs propose multiple sanctions, including imposing an adverse inference against Aspen Way on the topics Pollock did not or could not provide testimony. The Court finds that Aspen Way's failure to produce an adequate 30(b)(6) designee is not sufficiently egregious for the Court to impose an adverse inference.[40] The Plaintiffs also ask the Court to bar Aspen Way from taking a position or presenting evidence on the topics at issue. The Court finds it would be inequitable to Aaron's to order such outcome determinative sanctions. As Aaron's correctly asserted at the class certification hearing, by barring Aspen Way from presenting evidence, the Court would effectively penalize Aaron's. Indeed, such sanctions would likely establish Aspen Way's liability, which would also establish a key element of the Plaintiffs' aiding and abetting claim against Aaron's. The Court finds this scenario

---

[39]     Id. (quoting Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000)).

[40]     See In re Brican Am. LLC Equipment Lease Litig., No. 10-md-02183-SEITZ, 2013 WL 5519969, at *12 (S.D. Fla. 2013) ("[T]he failure of Defendant NCMIC to produce an adequate 30(b)(6) deponent is not sufficiently egregious for the Court to issue an order in limine as to 'beneficial' inferences requested by the Plaintiffs . . . .").

to be unfairly prejudicial to Aaron's, an innocent party in the deposition mishap.[41] As a result, the Court finds that lesser sanctions are appropriate.

The Court concludes that the appropriate remedy is to bar any party from using Pollock's testimony and to bar Pollock from testifying at trial.[42] The Court will also re-open discovery for the limited purpose of the parties conducting another Rule 30(b)(6) corporate representative deposition.[43] The deposition topics will be limited to those originally noticed by the Plaintiffs and assigned to Pollock at his first deposition.[44] Finally, Aspen Way shall bear the following costs: (1) one-half of the court reporter/videographer fees for Pollock's first deposition; (2) one-half of the Plaintiffs' lodging expenses for Pollock's first deposition; (3) the Plaintiffs' attorney fees, court reporter/videographer fees, and travel expenses for Pollock's second

---

[41]     See Bonilla v. Volvo Car Corp., 150 F.3d 88, 93-94 (1st Cir. 1998) ("Codefendants cooperate all the time, but that does not mean that one defendant is automatically responsible for misconduct of another – of which it may have no knowledge or as to which it may have play no role, active or passive.").

[42]     The Plaintiffs also asked that Pollock's testimony be barred from use at the class certification stage. However, briefing for all parties on the Motion for Class Certification was finished prior to the Plaintiffs filing their instant Motion. The Court will not ask the parties to re-brief the Plaintiffs' Motion for Class Certification.

[43]     The Defendant Aspen Way has already identified Clint Welch as a substitute 30(b)(6) witness. Aspen Way states that it has already begun preparing Mr. Welch for a possible deposition. See Def. Aspen Way's Resp. Br., at 24-25.

[44]     See Pls.' Mot. for Sanctions, Ex. B.

deposition; and (4) the Plaintiffs' attorney fees associated with bringing this Motion for Sanctions. Aspen Way and the Plaintiffs must meet and confer in an effort to reach an agreement upon the appropriate costs. If the parties are unable to reach an agreement, the Plaintiffs may file a motion requesting the costs. In addition, the Plaintiffs must submit evidence, such as receipts and time records, with their motion to support the amount of costs sought.

### III. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Plaintiffs' Motion for Sanctions [Doc. 114].

SO ORDERED, this 25 day of January, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge