IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL PETERSON, et al.,

    Plaintiffs,

      v.

                            CIVIL ACTION FILE
                            NO. 1:14-CV-1919-TWT

AARON'S, INC., et al.,

    Defendants.

## OPINION AND ORDER

The Plaintiffs Michael Peterson and Matthew Lyons allege in this action that the Defendant Aspen Way Enterprises, Inc., a franchisee of the Defendant Aaron's, Inc., unlawfully accessed their computers from a remote location and collected private information stored therein. It is before the Court on the Plaintiffs Michael Peterson and Matthew Lyons's Motion for Class Certification [Doc. 84]. For the reasons set forth below, the Plaintiffs' Motion for Class Certification [Doc. 84] is DENIED.

## I. Background

The Defendant Aaron's, Inc. franchises independently-owned stores that are in the business of, *inter alia*, selling and leasing consumer electronics. The Plaintiff

Matthew Lyons – an Oklahoma resident – entered into a lease agreement to rent laptop computers from Aspen Way – a Montana-based franchisee of Aaron's. The Plaintiffs contend that Mr. Lyons entered into the lease agreement on behalf of his law firm, Peterson & Lyons, LLC. The Plaintiff Michael Peterson – a Colorado resident – was the other named partner at the law firm, which is now defunct.

The Plaintiffs allege that Aspen Way remotely accessed their computers and captured private information. They contend that Aspen Way was able to obtain their private information through a spyware software program named PC Rental Agent ("PCRA"), which was installed on their computers without their consent. The software had an optional function called "Detective Mode." When activated, Detective Mode could collect screen shots, keystrokes, and webcam images from the computer. The Plaintiffs allege that between 2008 and 2012, it was Aspen Way's practice to install PCRA on each of its customers' computers. According to a report produced by Aspen Way, as of August 2011, Aspen Way had installed PCRA on 4,195 computers and activated Detective Mode on approximately 167 of them.[1]

The Plaintiffs' class-action complaint asserts claims against Aaron's and Aspen Way, alleging common law invasion of privacy, aiding and abetting, and violations of the Georgia Computer Systems Protection Act ("GCSPA"). On Defendants' Motion

---

[1]     See Mot. for Class Cert., Exs. 10, 12, at No. 4.

to Dismiss, the Court dismissed the Plaintiffs' GCSPA claim.[2] The Plaintiffs now move to certify a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

## II. Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b).[3]  Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[4]

These prerequisites are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[5]  Failure to establish any one of the four

---

[2]     [Doc. 61].

[3]     Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).

[4]     Fed. R. Civ. P. 23(a).

[5]     Cooper v. Southern Co., 390 F.3d 695, 711 n.6 (11th Cir. 2004), *overruled in part on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

factors precludes certification. In addition, under Rule 23(b), the individual plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class, necessitating final injunctive or declaratory relief; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.[6]   The party seeking class certification bears the burden of proving that these requirements are satisfied.[7]

The decision to grant or deny class certification lies within the sound discretion of the district court.[8] When considering the propriety of class certification, the Court should not conduct a detailed evaluation of the merits of the suit.[9] Nevertheless, the Court must perform a "rigorous analysis" of the particular facts and arguments

---

[6]      Fed. R. Civ. P. 23(b).

[7]      General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

[8]      Klay, 382 F.3d at 1251; Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc).

[9]      Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

asserted in support of class certification.[10] Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.[11]

## III. Discussion

### A. Standing

"[I]t is well-settled that prior to certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."[12] As such, "any analysis of class certification must begin with the issue of standing."[13] For a plaintiff to have standing, he or she "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[14] Thus, "[i]f the named plaintiff seeking to represent a class fails to

---

[10]    Falcon, 457 U.S. at 161; Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

[11]    Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351-52 (2011).

[12]    Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000).

[13]    Id. at 1280 (quoting Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987)).

[14]    London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1251 (11th Cir. 2003) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class."[15]

The Defendant Aspen Way contends that the named Plaintiff Michael Peterson does not have standing. Specifically, Aspen Way states that there is only evidence of the named Plaintiff Matthew Lyons leasing a computer from Aspen Way. Moreover, Peterson, as a partner of Peterson & Lyons, LLC, cannot be considered an employee of Lyons or the law firm. As a result, Aspen Way asserts that Peterson  is not a member of the proposed class, because he is neither a lessee/purchaser nor an employee of a lessee/purchaser. In response, the Plaintiffs argue that Peterson is an employee of the law firm. And because Lyons leased the computer for the law firm's employees, Peterson is a member of the proposed class. To prove he is an employee, the Plaintiffs point toward Peterson's own testimony in which he stated he considered himself an employee of the law firm.[16]

---

[15]     Church v. City of Huntsville, 30 F.3d 1332, 1340 (11th Cir. 1994) (quoting Lynch v. Baxley, 744 F.2d 1452, 1456 (11th Cir. 1984)).

[16]     See Pls.' Reply Br., at 8-9 (citing Peterson Dep., at 32). The Plaintiffs also contend that, under the Fair Labor Standards Act, he can be considered an employee. See id. at 9 (citing 29 U.S.C. § 203(e)(1)). However, other than pointing to the statute, the Plaintiffs fail to provide any evidence that demonstrates he qualifies as an employee under the statute.

The Court finds that, based on the evidence presented, the named Plaintiff Michael Peterson cannot be considered a member of the proposed class and therefore cannot represent it. First, the Plaintiffs fail to provide any evidence beyond Peterson's own testimony that proves he was an employee of the law firm.[17] Generally, a partner at a small law firm is not considered an employee of the law firm.[18] More problematic, though, is the fact that the Plaintiffs do not provide evidence demonstrating the law firm leased computers from Aspen Way. Despite claiming the law firm leased multiple computers,[19] the Plaintiffs only identify one computer lease agreement, No. 190999179, and that computer was leased by – and in the name of – Matthew Lyons.[20] Lyons cannot recall whether he leased any computers in the law firm's name.[21] By

---

[17]    As a means to identify employees, the Plaintiffs suggest in their Motion that W-2s or Form 1099-Misc. could be used. See Mot. for Class Cert., at 12. But the Plaintiffs do not provide this information for Mr. Peterson.

[18]    See, e.g., Fountain v. Metcalf, Zima & Co., P.A., 925 F.2d 1398, 1401 (11th Cir. 1991) (finding a partner of a small accounting firm was not an employee under the ADEA, because the partner participated "in the firm's management control, and ownership").

[19]    The Plaintiffs' own testimony is inconsistent with regard to how many computers were leased from Aspen Way. Lyons testified that two computers were leased. Lyons Dep., at 50. But Peterson testified that approximately four or five computers were leased. Peterson Dep., at 35.

[20]    See Def. Aspen Way's Resp. Br., Ex. 7; Second Am. Compl. ¶¶ 69-82.

[21]    See Lyons Dep., at 58.

only providing evidence of the computer leased by Lyons, Peterson would need to prove that he was an employee of Lyons. Peterson does not attempt such an argument.[22] As a result, the Court finds that the Plaintiffs have failed to demonstrate that Peterson has standing and is a member of the proposed class. Peterson, therefore, cannot represent the proposed class.[23] Despite the Court's holding as to Peterson, the class may still move forward with Lyons as its representative.[24]

**B. Ascertainability**

Next, the Court will address the threshold question of ascertainability.[25] To meet the implicit requirement of ascertainability, a plaintiff "must establish that the proposed class is 'adequately defined and clearly ascertainable.'"[26] A class definition

---

[22]     It should be noted that Peterson also does not argue that he used the Aspen Way computer in question. Based on the Plaintiffs' alternative class definition, his computer use could have potentially qualified him as a class member. See infra Section III.B.

[23]     See Bailey v. Patterson, 369 U.S. 31, 32-33 (1962) ("[Appellants] cannot represent a class of whom they are not a part.").

[24]     See Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993) ("At least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class.").

[25]     Grimes v. Rave Motion Pictures Birmingham, LLC, 264 F.R.D. 659, 663 (N.D. Ala. 2010) (noting that ascertainability is "the first essential ingredient to class treatment").

[26]     Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)); see also

should contain "objective criteria that allow for class members to be identified in an administratively feasible way."[27] To be administratively feasible, identifying class members must be a "manageable process that does not require much, if any, individual inquiry."[28]

The Plaintiffs seek certification of the following class: "(1) those persons who leased and/or purchased one or more computers from Aspen Way on which PC Rental Agent ("PCRA") was installed without their consent, and (2) their household members and employees."[29] The Defendants contend that the proposed class is impermissibly overbroad because it includes many individuals who never used a computer with PCRA or Detective Mode. The Court agrees. The proposed class includes numerous household members and employees who have not been injured and thus have no cause of action.[30] For example, it includes the employees of an individual who leased a

---

Walewski v. Zenimax Media, Inc., 502 F. App'x 857, 861 (11th Cir. 2012).

[27]    Karhu v. Vital Pharms., 621 Fed. Appx. 945, 946 (11th Cir. 2015).

[28]    Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014)  (quoting NEWBERG ON CLASS ACTIONS § 3.3 (5th ed.)).

[29]    Mot. for Class Cert., at 1.

[30]    See Walewski, 502 F. App'x at 861 (affirming the denial of class certification because the class included numerous individuals who were not injured); see also Perez v. Metabolife Intern., Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required

computer but never gave computer access to his or her employees. It also includes the children of an individual who leased a computer for work but never gave computer access to his or her children. Exacerbating this problem is the fact that the definition provides no end date. The Plaintiffs simply state the class extends from any point on or after June 6, 2008. As a result, the class includes all household members and employees of a computer lessee or purchaser since June 6, 2008, even though some household members and employees may not overlap with the period of time the computer was used by the lessee or purchaser.

Though not mentioned by the Defendants, the Court also finds the term "employee" to be vague. The Plaintiffs do not indicate in their Motion whether they intend to give the term its plain and ordinary meaning.[31] However, at the class certification hearing, the Plaintiffs stated they were "using the common understanding" of the term.[32] Nevertheless, the vagueness of the term is demonstrated by the debate over whether the named Plaintiff Peterson is considered an employee

---

to determine class membership becomes too administratively difficult.").

[31]    See Mot. for Class Cert., at 12 (noting that the term "household members" will be given its plain and ordinary meaning, but not indicating the same regarding the term "employee").

[32]    Class Cert. Hearing [Doc. 134], at 7.

of his law firm.[33] By trying to include Peterson as an employee, the Plaintiffs are not

giving the term its plain and ordinary meaning. For the Court to certify the proposed

class, the Plaintiff will need to better define the term "employee."

Apparently recognizing the faults in their first proposed class definition, the

Plaintiffs provide an alternative class definition in their Reply Brief. The alternative

definition states: "All users, and/or the lessor/owner, of computers leased and/or

purchased from Aspen Way from June 6, 2008 until December 23, 2011, on which PC

Rental Agent was installed without their consent, including users who were household

members or employees of the lessor/purchaser."[34] Unfortunately for the Plaintiffs, the

alternative definition raises its own set of ascertainability problems. By basing class

membership on computer use, the alternative definition includes numerous computer

users who will be extremely difficult to identify.[35] For example, the class would

include a friend of a lessee or purchaser who used the computer for a short period of

time. It will also include a babysitter who used the computer while babysitting a

lessee's or purchaser's children. The Plaintiffs provide no conceivable method for

---

[33]     See supra Section III.A.

[34]     Pls.' Reply Br., at 5.

[35]     See Grimes v. Rave Motion Pictures Birmingham, LLC, 264 F.R.D. 659, 665 (N.D. Ala. 2010) ("Class certification is not appropriate if the court is called on to engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class.").

identifying these types of class members.[36] Contrary to Plaintiffs' claims, Aspen Way's records will not identify such class members.[37] The names of lessees/purchasers and their addresses will not significantly help identify the friend or the babysitter in the examples above. And while the Plaintiffs may find the Defendants' arguments regarding both definitions to be contradictory, it is the Plaintiffs that bear the burden of demonstrating the class is ascertainable.[38] Thus, the Defendants may point out the flaws in the alternative class definition, regardless of their arguments as to the first definition.

---

[36]    The Plaintiffs also point out that the Defendants "stipulated in a related quasi-class action brought by the California Attorney General that by examining Aaron's own books and records it was capable of identifying a complete list of consumers eligible to receive restitution." See Pls.' Reply Br., at 5-6 n.6. But the Defendants did not stipulate they could identify the putative class members at issue in the present lawsuit. The California litigation stipulation was to "each customer of an Aaron's corporate-owned or franchised-owned store in California who, between April 1, 2010 and March 31, 2014, entered into, or made payments on, a Covered rent-to-own transaction." Pls.' Reply Br., Ex. R. Thus, this stipulation does not assist the Plaintiffs' argument.

[37]    Karhu v. Vital Pharms., 621 Fed. Appx. 945, 948 (11th Cir. 2015) (finding that the plaintiff may use the defendant's business records to identify potential class members, but that "the plaintiff must also establish that the records are in fact useful for identification purposes and that identification will be administratively feasible" (internal punctuation omitted)).

[38]    See Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233 (11th Cir. 2016) ("The party seeking class certification has the burden of proof. And the entire burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'" (citation omitted) (quoting Simmons v. Blodgett, 110 F.3d 39, 42 (9th Cir. 1997))).

Because the Court finds there are fatal flaws in both class definitions, the Plaintiffs' Motion for Class Certification should be denied. Nevertheless, because deficient class definitions can be modified, the Court will continue with its class certification analysis.[39] The Plaintiffs' Motion for Class Certification, as well as the Defendants' response briefs, primarily focus on whether the Plaintiffs satisfy Rule 23(b)(3)'s "predominance" requirement. Consequently, the Court will first address the predominance prong of Rule 23(b)(3).

**C. Rule 23(b)(3)**

To certify a Rule 23(b)(3) class, the Plaintiffs must prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members."[40] To establish predominance, it is not necessary that all questions of law or fact be common. Nonetheless, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof."[41] "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying

---

[39]    Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 631 (S.D. Fla. 2008).

[40]    Fed. R. Civ. P. 23(b)(3).

[41]    Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004).

cause of action."[42] "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."[43]

"In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."[44] As a result, a district court must address how variations in state law affect predominance. "To certify a multi-state class action, a plaintiff must prove through 'extensive analysis' that there are no material variations among the law of the states for which certification is sought."[45] A district court should deny certification if the plaintiff fails to carry this burden.[46] Here, the Plaintiffs initially state that seven different state laws may apply to the putative class members' claims. But in their reply brief, the Plaintiffs change their tune. There, they contend

---

[42]    Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004).

[43]    Id.

[44]    Id. at 1261 (quoting Castano v. American Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996)).

[45]    Id. at 1262.

[46]    Id.

that because no foreign statues are involved, this Court should apply the common law as developed in Georgia.[47]

"A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state."[48]  Because the claim for invasion of privacy is a tort claim, "this court will look to how Georgia courts determine the applicable law in tort cases."[49] Georgia generally follows the doctrine of lex loci delicti for tort cases.[50] Lex loci delicti applies the substantive law of the place where the wrong occurred.[51] "The general rule is that 'the place of the wrong, the locus delicti, is the place where the injury was suffered . . . or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for the alleged tort takes place.'"[52] Under this doctrine, therefore, the law of the

---

[47]     Pls.' Reply Br., at 19-21.

[48]     Brenner v. Future Graphics, LLC, 258 F.R.D. 561, 571 (N.D. Ga. 2007) (quoting Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc., 713 F.2d 1500, 1503 (11th Cir. 1983)).

[49]     Id.

[50]     Dowis v. Mud Slingers, Inc., 279 Ga. 808, 816 (2005).

[51]     International Bus. Machs. Corp. v. Kemp, 244 Ga. App. 638, 640 (2000).

[52]     Risdon Enters, Inc. v. Colemill Enters, Inc., 172 Ga. App. 902, 903 (1984).

jurisdiction where each putative class member suffered harm would apply to the class claims.

However, the Georgia choice of law system has a unique exception if the lex loci delicti is foreign law. "Foreign law does not apply if 'no foreign statutes are involved.'"[53] As a result, "Georgia courts apply the common law as developed in Georgia rather than foreign case law."[54] It is presumed that no foreign statues are involved if the parties do not identify any statutes in their pleadings.[55] For the Plaintiffs' invasion of privacy and aid and abetting claims, neither party references any applicable foreign statutes.[56] "Therefore, Georgia's choice of law rules require application of Georgia law unless such application is inconsistent with due process."[57]

---

[53]     In re Stand 'N Seal, No. 1:07MD1804-TWT, 2009 WL 2998003, *2 (N.D. Ga. Sept. 15, 2009) (quoting In re Tri-State Crematory Litig., 215 F.R.D. 660, 677 (N.D. Ga. 2003)).

[54]     In re Tri-State Crematory Litig., 215 F.R.D. at 677.

[55]     See In re Tri-State Crematory Litig., 215 F.R.D. at 678 n.6 (citing Avnet, Inc. v. Wyle Labs., Inc., 263 Ga. 615, 620 (1993)).

[56]     It should be noted that the Plaintiffs also seek punitive damages. Punitive damages are covered by statute, and thus the Court cannot apply Georgia law to all of the class members' punitive damages claims. See, e.g., Colo. Rev. Stat. § 13-25-127(2).The Plaintiffs fail to provide any sort of analysis of the foreign punitive damages statutes at issue. As a result, the Court finds that punitive damages are not appropriate for class certification in the instant class action.

[57]     Brenner v. Future Graphics, LLC, 258 F.R.D. 561, 571 (N.D. Ga. 2007).

To be consistent with due process, Georgia must have "significant contact or significant aggregation of contacts to the claims asserted by each  member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [Georgia] law is not arbitrary or unfair."[58]

The Plaintiffs argue that there are significant contacts to Georgia. Specifically, they note that Aaron's is incorporated in Georgia and the technical assistance for PCRA "emanated from Georgia."[59] Additionally, citing the franchisee agreement, the Plaintiffs state that Aaron's franchisees expected Georgia law to apply.[60] But none of the contacts identified by the Plaintiffs establish significant connections between *their* claims and Georgia. Aspen Way – a Montana based franchisee – operates stores in Colorado, Idaho, Montana, South Dakota, Washington, and Wyoming.[61] The Plaintiffs have not alleged that Aspen Way conducted any unlawful acts outside of those six states. Indeed, the Plaintiffs' claim against Aaron's is based on vicariously liability for Aspen Way's out-of-state conduct.

---

[58]    Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985).

[59]    Pls.' Reply Br., at 20 n.16.

[60]    Id. at 20, Ex. 5.

[61]    Mot. for Class Cert., Ex. 1.

Furthermore, the cases cited by the Plaintiffs in support of their argument are distinguishable.[62] For example, in <u>Brenner v. Future Graphics, LLC</u>, all the defendants either resided or maintained an office in Georgia, all investment monies were wired or mailed to Georgia, and other payments by defendants were mailed or wired to Georgia.[63] By contrast – here – the best evidence the Plaintiffs have put forth is Aaron's headquarters in Georgia. But that is not enough to satisfy due process under the circumstances. Consequently, the Court finds that there are insufficient contacts to apply Georgia common law to all claims. Because Georgia law cannot apply to all claims, the Court would have to conduct individualized choice of law analyses, including due process analyses, for each putative class member. This alone defeats predominance.[64]

---

[62]     <u>See</u> <u>In re Stand 'n Seal, Prods. Liab. Litig.</u>, No. 1:07MD1804-TWT, 2009 WL 2998003, at *2 (N.D. Ga. Sept. 15, 2009) (holding that Georgia law would apply to all out-of-state claims, but the plaintiffs, who did not bring the motion, did not assert a due process challenge); <u>In re Tri-State Crematory Litig.</u>, 215 F.R.D. 660, 677-78 (N.D. Ga. 2003) (finding that human remains – which gave rise to the plaintiffs' claims – located in Georgia created significant contacts with the state).

[63]     <u>Brenner v. Future Graphics, LLC</u>, 258 F.R.D. 561, 571 (N.D. Ga. 2007).

[64]     <u>See</u> <u>Automotive Leasing Corp. v. Mahindra & Mahindra, Ltd.</u>, No. 1:12-cv-2048-TWT, 2014 WL 988871, at *4 (N.D. Ga. Mar. 14, 2014) (holding that commonality was not met where "the Court would have to conduct differing due process analyses for many of the approximately 340 potential class members").

The Plaintiffs contend that if the Court rules against them on the issue of due process, then their original choice of law analysis is sufficient. For multiple reasons, the Court disagrees. Where the law of several states may apply to the putative class members' claims, the Plaintiff must provide an analysis of state law variations to determine whether these variations prohibit class certification.[65] Indeed, "it is 'the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law.'"[66] Here, the Plaintiffs contend that the impacted states articulate an invasion of privacy claim in a virtually identical manner. They state that four states – Georgia, Colorado, Idaho, and Washington – have adopted Section 652B of the Restatement (Second) of Torts, which provides the elements of an invasion of privacy claim.[67] Then, the Plaintiffs lay out the elements of an invasion of privacy claim in South Dakota, Wyoming, and

---

[65]    See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1180 (11th Cir. 2010) ("The issue can only be resolved by first specifically identifying the applicable state law variations and then determining whether such variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines." (quoting Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986))).

[66]    Id. (quoting Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 313 (5th Cir. 2000)).

[67]    See Mot. for Class Cert., Ex. B, at 5-10.

Montana, contending that the differences between the elements are largely stylistic.[68] Any differences beyond style, the Plaintiffs state, can be accounted for in the jury instructions.

The Court finds the Plaintiffs' state law analysis to be lacking. As the Defendants correctly point out, there are many variations among the seven states' laws that the Plaintiffs fail to acknowledge. First, the Plaintiffs misstate Wyoming law; Wyoming does not recognize the tort of invasion of privacy.[69] Second, the states differ in the necessary degree of offensiveness. Georgia only requires that the conduct be "offensive or objectionable,"[70] while in Montana, the conduct must "outrage or cause mental suffering, shame or humiliation."[71] Third, the jurisdictions do not interpret the element of intent in the same manner. Washington requires the defendant to have "acted deliberately to achieve the result, with the certain belief that the result would

---

[68]     Id.

[69]     See Byrd v. Aaron's, Inc., 14 F. Supp. 3d 667, 692 & n.18 (W.D. Pa. 2014), rev'd on other grounds by 784 F.3d 154 (3d Cir. 2015). The Plaintiffs cite two authorities in support of their contention that Wyoming recognizes the tort. The Court has analyzed both authorities and neither of them even mentions the tort. See Green River v. Bunger, 58 P.2d 456, 460-62 (Wyo. 1936); Wyo. Stat. Ann. § 8-1-101.

[70]     Association Servs., Inc. v. Smith, 249 Ga. App. 629, 632 (2001).

[71]     Deserly v. Department of Corr., 995 P.2d 972, 977 (Mont. 2000).

happen,"[72] but Georgia analyzes intrusion under an objective standard.[73] Fourth, the states evaluate damages differently. For example, Colorado has different categories of damages,[74] while Idaho decides damages based on the jury's "sense of fairness and justice."[75] Finally, the statute of limitations vary among the states.[76] These variations in the implicated states' laws necessitate a more detailed analysis from the Plaintiffs. An even more egregious omission, however, is the Plaintiffs' failure to address their aiding and abetting claim in their analysis. In their response brief, the Defendants point to the different variations of the states' laws for an aiding and abetting claim. They note that while several jurisdictions have adopted the Restatement (Second) of Torts § 876, Colorado has adopted an alternative test[77] and Wyoming may not even recognize the claim. It is the Plaintiffs' burden to provide an analysis for state law

---

[72]     <u>Fisher v. State</u>, 106 P.3d 836, 879 (Wash. Ct. App. 2005).

[73]     <u>Johnson v. Allen</u>, 272 Ga. App. 861, 864 (2005).

[74]     <u>Doe v. High-Tech Inst.</u>, 972 P.2d 1060, 1066 (Colo. Ct. App. 1998).

[75]     <u>Alderson v. Bonner</u>, 132 P.3d 1261, 1272 (Idaho Ct. App. 2006).

[76]     <u>See, e.g.</u>, Colo. Rev. Stat. Ann. § 13-80-102 (two years); Mont. Code Ann. § 27-2-204 (three years).

[77]     <u>See</u> <u>Holmes v. Young</u>, 885 P.2d 305, 308 (Colo. Ct. App. 1994).

variations for all of their claims.[78] As a result, the Court finds that the Plaintiffs have "failed to articulate adequately how these variations in state law would not preclude predominance in this case."[79]

Even if the Plaintiffs' choice of law analysis was sufficient, their intrusion upon seclusion claim raises other predominance problems. The Plaintiffs contend that merely installing PCRA on the Plaintiffs' computers is sufficient to find an invasion of privacy claim. However, using the Plaintiffs' proposed jury instructions, it is clear to the Court that their intrusion upon seclusion claim is highly individualized. The Plaintiffs propose the following instructions:

> Plaintiffs and the class seek to recover damages based upon a claim of invasion of privacy by intrusion into private affairs. The essential elements of such a claim are:
>
> One: The intentional intrusion, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of another;
>
> Two: The intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and
>
> Three: The intrusion caused plaintiff to sustain injury, damage, loss or harm.

---

[78]    Cole v. General Motors Corp., 484 F.3d 717, 724 (5th Cir. 2007) ("Failure to engage in an analysis of state law variations is grounds for decertification.").

[79]    Id. at 726.

> In determining whether an intrusion is highly offensive, you should consider all the evidence, including the degree of the intrusion; the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives; the setting in which the intrusion occurred, and the plaintiff's expectations in that setting.[80]

Thus, in order to determine whether an offensive invasion occurred, the jury will have to look at the particular circumstances of each class member. For example, an employee using a work computer that was leased by his or her employer may not have the same expectation of privacy as a lessor using a computer as his or her personal computer.

The Plaintiffs' contention also fails to acknowledge PCRA's limited functions and differences from Detective Mode. From 2008 through most of 2011, PCRA's main function was a "kill switch."[81] Through the kill switch, Aspen Way could remotely shut down any computer.[82] However, the kill switch did not capture any private information. After 2011, PCRA had the ability to capture geolocation information.[83] PCRA also provided Aspen Way with a log containing technical data

---

[80]    See Mot. for Class Cert., Ex. B, at 9-10.

[81]    See Def. Aaron's Resp. Br., Ex. B, at 72.

[82]    Id.

[83]    See id., Ex. A., at 77.

from each computer, but the log did   not contain any personally identifiable information.[84]

Detective Mode is a separate software.[85] It enabled Aspen Way to capture personal information, such as screen shots, key strokes, and webcam images.[86] Importantly, though, Detective Mode was not preinstalled on any Aspen Way computers.[87] Instead, Aspen Way had to request Detective Mode be activated on a computer. Aspen Way requested that Detective Mode be activated on a limited number of class members' computers.[88] Because of the differences between PCRA and Detective Mode, individual inquiries into each class member's claim will be necessary to determine what, if any, offensive invasions occurred. For example, a class member could have leased a computer in 2008 and returned it to Aspen Way in

---

[84]     See Mot. for Class Cert., Exs. 2, 9. Other courts have held that technical information about a computer, like an IP address or a serial number, is not personal information. See In re iPhone Application Litigation, 844 F. Supp. 2d 1040, 1063 (N.D. Ca. 2012) (finding that disclosure of electronic device identifier and geolocation information did not constitute an invasion of privacy under California's constitutional right to privacy).

[85]     See Def. Aaron's Resp. Br., Ex. B, at 38, 46, 68.

[86]     See Def. Aspen Way's Answer ¶ 41.

[87]     See Def. Aaron's Resp. Br., Ex. B., at 90.

[88]     See id.; Mot. for Class Cert., Ex. 12. (Aspen Way's Supplemental Answer) ¶ 4 (admitting to activating Detective Mode on 167 computers).

2009. If Detective Mode was never activated on the class member's computer, his or her private information was likely never captured. These inquiries will be very fact-dependent, resulting in individual issues predominating the class claims.

The Plaintiffs respond by pointing to cases where courts have found an invasion of privacy because a person simply installed a device capable of capturing private information. For example, in <u>Koeppel v. Speirs</u>, the Iowa Supreme Court found that a female employee who discovered a hidden camera in a workplace bathroom had sufficiently alleged an invasion of privacy claim to survive summary judgment, despite a lack of evidence that someone actually watched the camera.[89] But the instant situation is very different from a hidden camera in a bathroom, where everyone has a reasonable expectation of privacy. As previously noted, not all class members may have maintained an expectation of privacy while using their computers. Moreover, PCRA – without Detective Mode activated – was not capable of capturing private information. Thus, the jury will need to examine the individual circumstances of each class member to determine if an invasion of privacy occurred.[90]

---

[89]   <u>See</u> 808 N.W.2d 177, 184 (Iowa 2011).

[90]   <u>See</u> <u>Castro v. NYT Television</u>, 895 A.2d 1173, (N.J. Super. Ct. App. Div. 2006) (denying class certification where "the determination of defendants' liability for [intrusion upon seclusion] will necessarily turn on the particular circumstances of the videotaping of each individual plaintiff, including the nature of

The issue of damages creates even more hurdles for the Plaintiffs. The Plaintiffs are seeking compensatory damages, arguing that they should be determined by the enlightened conscience of an impartial jury. They state "a total, single monetary sum" can be awarded by the jury.[91] This single sum would be based on the Plaintiffs' presentation of "a handful of the Defendants' own witnesses and documents."[92] Then, "[a] post-judgment molding of the verdict would follow, in which the Defendants' own records would be used to distribute checks to each individual Class member based on a pro rata or other court-approved calculation of individual class members' damages."[93]

However, this proposal offends the Rules Enabling Act. Under the Rules Enabling Act, a class action may not "abridge, enlarge, or modify" substantive rights.[94] "Roughly estimating damages to the class as a whole and only subsequently allowing for processing of individual claims would inevitably alter defendants'

---

the area where the videotaping was conducted, the appearance of the plaintiff during the videotaping, what medical procedure, if any, was being performed, and whether the plaintiff objected to or welcomed the videotaping").

[91]    Mot. for Class Cert., Ex. B., at 2.

[92]    Id.

[93]    Id.

[94]    28 U.S.C. § 2072(b).

substantive right to pay damages reflective of their actual liability."[95] Indeed, by determining damages through a sampling of witnesses and documents, the damages calculation will neither accurately reflect the number of class members actually injured nor the amount of harm actually caused by the defendants.[96] Thus, the jury will have to consider the individual circumstances of each class member to determine the appropriate damages.[97] To be sure, "the 'black letter rule' recognized in every circuit is 'individual damage calculations generally do not defeat a finding that common issues predominate.'"[98] But – as the Eleventh Circuit has acknowledged – "the black-letter rule has always been subject exceptions."[99] And one such exception applies here:

---

[95]    McLaughlin v. American Tobacco Co., 522 F.3d 215, 231 (2d Cir. 2008), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).

[96]    Id.

[97]    The Plaintiffs point to In re Tri-State Crematory Litigation as evidence that – in a class action – damages can be left to the jury's discretion. However, that case did not involve the same fluid recover argument presented by the Plaintiffs. See 215 F.R.D. 660, 699 (N.D. Ga. 2003) (finding that bifurcation of the class was appropriate and that damages would be tried individually during the second phase of the trial).

[98]    Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1239 (11th Cir. 2016).

[99]    Id.

"individual damages defeat predominance when they are accompanied by 'significant individualized questions going to liability.'"[100]

Finally, the Defendants raise the affirmative defense of consent.[101] They claim that while Aspen Way did not have a specific policy regarding whether to inform customers about PCRA and Detective Mode, some customers may have been aware of the software and consented to it. For example, the Defendants point to evidence of an Aspen Way store manager stating that he routinely obtained consent from customers.[102] Moreover, they note that some activations of Detective Mode were made only after customers requested it in order to locate a stolen or lost computer.[103] Thus, according to the Defendants, whether a customer consented to the use of PCRA or Detective Mode is a fact-specific inquiry. The Plaintiffs respond by arguing that consent can be determined on a classwide basis, because  Aspen Way admitted that

---

[100]    Id. (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004)).

[101]    See, e.g., Canziani v. Visiting Nurse Health Sys., Inc., 271 Ga. App. 677, 679 (2005) (noting that the right to privacy may be waived).

[102]    Def. Aaron's Resp. Br., Ex. D.

[103]    See Mot. for Class Cert., Ex. 12 (Addendum to Aspen Way's Supplemental Answer to Pls.' Interrogatory 4(c)) (identifying four instances in which a customer requested that Detective Mode be activated).

it had no policy to inform its customers about PCRA or Detective Mode.[104] Moreover, they note that affirmative defenses do not defeat predominance.

The Court disagrees that consent can be proven on a classwide basis. While Aspen Way may not have maintained a policy regarding PCRA, that does not mean every class member was unaware of the software. As the Defendants' evidence demonstrates, some class members may have been aware of the software or may have requested it be activated on their computers. Thus, the issue of consent will be an individual inquiry. And though the Court recognizes that "individual affirmative defenses generally do not defeat predominance . . . the individual nature of affirmative defenses is still relevant to whether predominance is satisfied."[105] As a result, the issue of consent, especially when coupled with the other individual issues already discussed, contributes to the class's predominance problems.

Because the Court finds that common issues do not predominate, it is not required to determine whether a class action is superior.[106] Nevertheless, because the

---

[104]   Id., Ex. 7 ¶ 30.

[105]   Brown, 817 F.3d at 1240.

[106]   See Mills v. Foremost Ins. Co., 511 F.3d 1300, 1308 (11th Cir. 2008) (noting that a plaintiff must show that common questions of law or fact predominate and show superiority of a class action in order to satisfy Rule 23(b)(3)).

Order is subject to interlocutory review, the Court will provide a brief discussion regarding the superiority requirement. Rule 23(b)(3) requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."[107] The factors relevant to the superiority requirement include:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.[108]

These factors weigh against certification of the proposed class. First, several putative class members have filed their own individual lawsuits, which demonstrates the putative class members may have a strong interest in controlling their own litigation.[109] Second, of the lawsuits already filed, this case is the only one filed in Georgia, suggesting that it may not be desirable to concentrate the litigation in the

---

[107]   FED. R. CIV. P. 23(b)(3).

[108]   Carriuolo v. General Motors Co., 823 F.3d 977, 989 (11th Cir. 2016) (quoting FED. R. CIV. P. 23(b)(3)).

[109]   See Def. Aaron's Resp. Br., Exs. G, L, U, S.

Northern District of Georgia. Third, the numerous individualized issues create a manageability problem for the Court.[110] This manageability problem is exacerbated by the Plaintiffs' inadequate trial plan and choice of law analysis. Consequently, the Court finds that a class action is not superior to other available methods of adjudication of this controversy.

### D. Rule 23(b)(2)

In conjunction with certification under Rule 23(b)(3), the Plaintiffs seek to certify a class under Rule 23(b)(2). Specifically, they seek "a Court-approved notice to the class that their computers are laden with spyware."[111] The Plaintiffs' (b)(2) class fails for two reasons. First, in order to certify a Rule 23(b)(2) class, any individualized money damages sought must be incidental to the equitable relief requested.[112] If the monetary damages are not incidental, the absence of notice and opt-out under Rule

---

[110]    See Shelley v. Amsouth Bank, No. CIV.A.97-1170-RV-C, 2000 WL 1121778, at *9 (S.D. Ala. July 24, 2000) ("[T]he complexity of the individual issues weighs further against manageability of the class action. Most if not all the individual issues identified above would require extensive individualized examination of each class member." ).

[111]    Pls.' Reply Br., at 27.

[112]    See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 363 (2011) ("In the context of a class action predominately for money damages we have held that absence of notice and opt-out violates due process.").

23(b)(2) would violate the putative class members' due process rights.[113] Here, the Plaintiffs are seeking monetary relief for each putative class member, and the damages calculation will be individualized. Thus, the requested monetary relief cannot be considered incidental to the injunctive relief. Second, injunctive relief cannot be granted unless "a serious risk of continuing irreparable injury" is apparent.[114] The Plaintiffs have not presented an argument as to why there is a serious risk of future injury. As a matter of fact, there appears to be little to no risk of continuing injury because the Defendants have entered into consent decrees with the Federal Trade Commission agreeing to cease any use of the monitoring software at issue.[115] The Court, therefore, finds that the Plaintiffs' Rule 23(b)(2) class should not be certified.

## IV. Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Class Certification [Doc. 84] is DENIED.

---

[113]   Id.

[114]   Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000).

[115]   See Def. Aaron's Resp. Br., Exs. O, P, Q.

SO ORDERED, this 24 day of January, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge